```
Bryan R. Hill
3140 Seawind Dr.
Anchorage, AK  99516
(907) 243-1767
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BRYAN R. HILL,            ) Case No.: 3:12-cv-0003-TMB
                          )
        Plaintiff,        )
                          )
    vs.                   )
                          )
UNITED STATES OF AMERICA, )
                          )
        Defendant         )

**COMPLAINT**

COMES NOW plaintiff Bryan R. Hill, states and alleges as follows:

JURISDICTIONAL ALLEGATIONS

1. Plaintiff Bryan R. Hill, at all times pertinent, was a resident of the State of Alaska, and a patient of the Veteran's Administration as well as recipient of other services provided by the Veteran's Administration.

2. The plaintiff's claims arise under the Federal Tort Claims Act 28 U.S.C. § 1346.2401 and 2671 et seq.

3. This complaint alleges several independent acts of negligence on the part of the Veteran's Administration Hospital employees, contractors and/or agents in Spokane, Washington; Anchorage, Alaska; and Seattle, Washington.

4. On information and belief, Julie Adams and Megan Dimpfel are employed by, contracted with, or are agents of the VA Puget Sound Healthcare System Seattle Division (hereinafter Seattle VA Hospital) in Seattle, Washington during all relevant times as alleged herein.

5. On information and belief, George B. Duck MD, who is an urologist, was a medical doctor employed by, contracted with, or agent of the Alaska VA Healthcare

[Summary of pleading] - 1

System and Regional Office (hereinafter Alaska VA Hospital) in Anchorage, Alaska during all relevant times as alleged herein.

6. The Seattle VA Hospital and Anchorage VA Hospital (during all relevant times herein) were part of the United States Department of Veteran's Affairs.

7. Plaintiff filed administrative claims for compensation with the U.S. Department of Veteran's Affairs for the injuries alleged in this Complaint on March 14, 2010. More than six months has passed since the filing of those administrative claims without response or action by the United States. Accordingly, plaintiff has exhausted his administrative remedies for the conduct alleged in the Complaint, permitting plaintiff to file an action for his injuries in the United States District Court for the District of Alaska.

FACTS

8. Plaintiff realleges paragraphs 1 through 9 as if fully set forth herein, and further alleges as follows:

9. In June 2008, Plaintiff then a recent left leg below the knee amputee, was a participant in the 29th National Veteran's Wheelchair Games held July 13-18, 2009 in Spokane, Washington. Because he was new to wheelchair sports he was identified as a Novice on the Northwest Team, was assigned as Athlete #314, and was scheduled to participate in five events: Bowling (manual), Field (javelin), Basketball, Hand cycling (10K), and Nine Ball (billiards).

10. Plaintiff was injured on July 14, 2009, while taking part in the Wheelchair basketball competition. Plaintiff had never played wheelchair basketball and did not have access to nor was he provided with a sport wheelchair similar to those used by the other players including one or more novices on his and other teams. He was instead required to use his standard wheelchair outfitted with rear anti-tip devices which he was told were a hazard to the other players and had to be removed for him to begin play. One of the plaintiff's coaches, Julie Adams, who it is believed to

[Summary of pleading] - 2

work for the Veteran's Administration, removed the two rear anti-tip devices on plaintiff's wheelchair.

11. During the basketball game plaintiff's wheelchair became entangled and locked together between two other players' wheelchairs. One of the other players was able to successfully unhook his wheelchair from plaintiff, however, plaintiff and the other player remained locked together. When the other player tried to free himself, he made a movement that caused plaintiff's wheelchair to tip over backwards resulting in his striking the back of his head on the basketball court. Plaintiff then got up, developing an immediate headache, neck pain and numbness of his right dominant arm and hand. He advised Ms. Adams of his pain and symptoms, and he was taken out of the game.

12. After the game plaintiff was transported to the Spokane VA Medical Center where he underwent a CT scan that showed significant spinal impingement at two levels (C5-C6 and C6-C7), he was placed in a c-collar and hospitalized. He was told he had a herniated and bruised disc, and after about a day of hospitalization he was released and returned to his hotel in Spokane.

13. When his neck pain continued and worsened with an additional onset of numbness of both hands and weakness of his right arm, he advised Julie Adams and Megan Dimpfel of his continuing pain and increasing symptoms. Ms. Adams and Ms. Dimpfel performed some sort of sensory examination of plaintiff and he was then taken to Providence Sacred Heart Medical Center in Spokane, Washington where he was again hospitalized about 10 days with another CT scan and other radiological studies performed that also showed disc herniations at C5-C6 and C6-C7. Plaintiff had surgery at Providence Sacred Heart, and after a period of recovery was again released and returned to the Seattle VA and then a hotel followed by a flight back to Alaska.

14. Plaintiff still continues to experience numbness and tingling in both his right and left hands; his activities of daily living are significantly and permanently

[Summary of pleading] - 3

limited; and his is further experiencing problems with bladder and bowel control as he is now unable to tell when he has to use the bathroom.

15. After plaintiff's return from Seattle he started to find blood in his urine, so he went to see his primary care physician (Dr. Gale) at the Anchorage VA Hospital, and she wanted plaintiff to see a urologist. An appointment was made for ***, 2009 with Dr. Duck at the Anchorage VA Hospital, who advised plaintiff he needed to undergo some tests of his bladder but in order to complete the tests, plaintiff needed to be taken off his Coumadin (blood thinner) for at least two days. Plaintiff informed Dr. Duck and Dr. Gale that the test needed to be done within two days because plaintiff was scheduled to go to Seattle VA Hospital on September 8, 2009 in order to have left leg prosthetic looked at.

16. Upon information and belief Dr. Duck called Dr. Gale and told her he would have to take plaintiff off the blood thinners for two days for the test. Dr. Gale was under the impression that the test was going to be in that two day period. However, later Dr. Duck told plaintiff that he could not get him in for the test for two weeks. Plaintiff then told Dr. Duck that he was scheduled to go to Seattle and Dr. Duck told plaintiff that it would be okay being off the Coumadin until he got back. The test was not performed so plaintiff flew to Seattle, even though being off Coumadin made plaintiff prone to clots.

17. When plaintiff got to the Seattle VA Hospital he complained about pain in his right foot and leg area. The Seattle VA Hospital did an ultra sound on plaintiff's right leg, but not the foot. Once the prosthetic on the left leg was fixed plaintiff was cleared to fly back to Alaska.

18. Within two days of returning from Seattle to Alaska, plaintiff had to go the emergency room at Elmendorf (Alaska) Air Force Base Hospital because his right leg and foot were swollen and the pain was unbearable. Plaintiff was told at Elmendorf that there wasn't a vascular physician there, so they sent him to Providence Alaska Medical Center in Anchorage, Alaska, where plaintiff is not sure of what exactly

[Summary of pleading] - 4

occurred. Other than he was diagnosed with clots in his right let behind the knee and in the groin area. They tried to put in stints and had a catheter in his leg and groin with heavy doses of blood thinners to try and clear out the clots. Approximately seven days later plaintiff was released from Providence Alaska Medical Center.

19. After plaintiff's release from Providence Alaska Medical Center he was seen by Dr. Gale who wanted him to be seen by Jeffery Congdon, M.D., who is a general surgeon. Dr. Congdon looked at the plaintiff's right foot and leg and promptly determined that the right food and let had to be removed because it had developed gangrene.

20. After plaintiff's return from the hospital he received a call from Dr. Duck who apologized to plaintiff for what happened to him.

Within four weeks of surgery, plaintiff's right leg had healed and could go to Seattle to get fitted for a new leg. When Plaintiff got to Seattle on November 5, 2009, rehab repaired plaintiff's left prosthetic but, said he had to wait to have my right leg fitting for a later time. They also wanted to have the plaintiff go through a CT mylogram, that after considerable thought, was declined. About a week later, plaintiff said to go ahead with the CT mylogram because the Plaintiff was experiencing more weakness on the right side and the bladder and bowel issues returned. Plaintiff agreed to have the test completed, but was cancelled because the unit that does the test forgot to give my doctor a list of medication that could not be taken prior to the test. The test was completed Thursday, December 3rd at 9:00 a.m. The purpose of the test was to find out if there is any of the continued weakness on the right side and bladder and bowel issues.

Plaintiff's occupation prior to the right leg amputation was a school bus driver for Forsyth and had planned on returning to his occupation. Plaintiff even went so far as to renew his CDL license. Since this all started, plaintiff has lost

[Summary of pleading] - 5

Case 3:12-cv-00003-TMB   Document 1   Filed 01/06/12   Page 5 of 6

occurred. Other than he was diagnosed with clots in his right let behind the knee and in the groin area. They tried to put in stints and had a catheter in his leg and groin with heavy doses of blood thinners to try and clear out the clots. Approximately seven days later plaintiff was released from Providence Alaska Medical Center.

19. After plaintiff's release from Providence Alaska Medical Center he was seen by Dr. Gale who wanted him to be seen by Jeffery Congdon, M.D., who is a general surgeon. Dr. Congdon looked at the plaintiff's right foot and leg and promptly determined that the right food and let had to be removed because it had developed gangrene.

20. After plaintiff's return from the hospital he received a call from Dr. Duck who apologized to plaintiff for what happened to him.

Within four weeks of surgery, plaintiff's right leg had healed and could go to Seattle to get fitted for a new leg. When Plaintiff got to Seattle on November 5, 2009, rehab repaired plaintiff's left prosthetic but, said he had to wait to have my right leg fitting for a later time. They also wanted to have the plaintiff go through a CT mylogram, that after considerable thought, was declined. About a week later, plaintiff said to go ahead with the CT mylogram because the Plaintiff was experiencing more weakness on the right side and the bladder and bowel issues returned. Plaintiff agreed to have the test completed, but was cancelled because the unit that does the test forgot to give my doctor a list of medication that could not be taken prior to the test. The test was completed Thursday, December 3rd at 9:00 a.m. The purpose of the test was to find out if there is any of the continued weakness on the right side and bladder and bowel issues.

Plaintiff's occupation prior to the right leg amputation was a school bus driver for Forsyth and had planned on returning to his occupation. Plaintiff even went so far as to renew his CDL license. Since this all started, plaintiff has lost

his job, the right leg was fine until the VA messed with his medications, lost his independence and is and has been in a state of severe depression.

As a side note: In June 2008, plaintiff had left leg amputated due to prolonged stasis ulcers. These stasis ulcers are terribly painful, and instead of dealing with the pain plaintiff chose amputation in hopes of reliving/ending the pain. This surgery was performed at Elmendorf Air Force Base Hospital in Anchorage, Alaska by Dr. Gates. Because the VA messed with plaintiff's blood thinners, plaintiff has no legs.

Dated this January 5, 2012

_____
Bryan R. Hill
3140 Seawind Dr.
Anchorage, AK  99516

[Summary of pleading] - 6